# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **CHARLES BELVIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:18-CV-0957-VEH** |
| | ) | |
| **CITY OF SPRINGVILLE and** | ) | |
| **CHRISTOPHER KELLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Charles Belvin, originally filed this Civil Action in the Circuit Court of St. Clair County, Alabama. (Doc. 1-1 at 2). Although the original Complaint does not appear in the record, the Plaintiff filed the First Amended Complaint, which is the operative complaint in this case[1], on May 22, 2018, and named as Defendants the City of Springville, Alabama (the "City"), and Officer Christopher Kelley[2], a member of the City of Springville's Police Department. (Doc. 1-1 at 2). The First Amended Complaint sets out counts for negligence against the City and Officer

---

[1] *See* doc. 11 at 3, n. 2.

[2] This is the correct spelling of this Defendant's last name. (*See* doc. 12-3 at 4(10); *see also generally* docs. 2, 5, 7, 8). The Amended Complaint spells this Defendant's last name K-E-L-L-Y. This Court's CM/ECF system uses that same spelling. The Clerk of Court is hereby **ORDERED** to change the name of this Defendant in the Court's CM/ECF system to reflect the proper spelling. On all future pleadings, and in all future references, the parties are to use the correct spelling of this Defendant's last name.

Kelley (Count One), wantonness against Officer Kelley (Count Two), and unreasonable use of force, in violation of 28 U.S.C. § 1983, against Officer Kelley (Count Three). All three counts arise out of Officer Kelley's actions in the course of arresting the Plaintiff.

The case comes before the Court on the Defendants' Motion for Summary Judgment (the "Motion"). (Doc. 7). Despite the failures of the Defendants' initial brief (and the absence of their reply brief), the Court has attempted to consider all the arguments before it. At the end of the day, the Defendants do nothing more than create a genuine issue of material fact for trial. For that reason, and the additional reasons stated herein, the Motion will be **DENIED**.

## I. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears

the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v.*

*City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence*

4

demonstrating that the non-moving party will be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering

*evidence* sufficient to withstand a directed verdict at trial on the material fact sought

to be negated. *Id.*

## II.    FACTS[3]

### A.    The "Narrative Statement of Facts" Proffered by the Defendants

The Court's Uniform Initial Order, filed in this case on June 22, 2018, states,

in pertinent part:

> The parties' submissions in support of and opposition to summary
> judgment motions must consist of: (1) a brief containing, in separately
> identified sections, (i) a statement of allegedly undisputed relevant
> material facts and (ii) a discussion of relevant legal authorities; and (2)
> copies of any evidentiary materials upon which the party relies.

(Doc. 3 at 15). That order continues:

---

[3] In substantial part, the Court has gleaned the facts set out herein from the facts proffered
by the parties. To the extent that a party has proffered a fact which is not disputed, it has been
included herein <u>exactly</u> as it was proffered, without citation. To the extent that a party disputes a
fact proffered by another party, the Court first examined the proffered fact to determine whether
the evidence cited in support of that fact actually supported the fact <u>as stated</u>. If it did not, the
Court did not include that fact. If it did, the Court then looked to whether the evidence cited in
support of the dispute actually established a dispute. If it did not, the Court presented the fact as
proffered, with citation to the evidence supporting the fact as proffered. If a party disputed a fact
with evidence contrary to the cited evidence, the Court viewed all of the evidence, as this Court
must, in the light most favorable to the non-movant, with citation to such supporting evidence. If
the Court needed to provide more explanation, it included that information in an appropriate
footnote. The Court may have omitted facts the parties proffered but which the Court deemed
irrelevant and/or immaterial. Further, as necessary, the Court may have included additional facts
cast in the light most favorable to the non-movant.

All briefs submitted either in support of or opposition to a motion must begin with a statement of allegedly undisputed relevant material facts set out in separately numbered paragraphs. Counsel must state facts in clear, unambiguous, simple, declarative sentences. All statements of fact must be supported by specific reference to evidentiary submissions.

(Doc. 3 at 16) (footnote omitted). Omitted from the paragraph above is a footnote that explains that "[a] specific reference must include the exhibit number, page, and when appropriate the line number." (Doc. 3 at 16, n. 3). The Order also states:

The moving party shall list in separately numbered paragraphs each material fact the movant contends is true and not in genuine dispute, and upon which the moving party relies to demonstrate that it is entitled to summary judgment. Each such statement must be followed by a specific reference to those portions of the evidentiary record that the movant claims supports it.

(Doc. 3 at 16) (footnote omitted and underlining added).

The Defendants initial brief contains a "Narrative Statement of Facts" consisting of only 4 sentences, which reads exactly as follows:

The plaintiff alleges that on February 26, 2014, he was notified that a warrant had been issued for his arrest by the City of Springville. (Amended Complaint attached as Exhibit A). The next morning, February 27, 2014, the plaintiff traveled to the Springville Police Department to turn himself in. (Exhibit A). At the Springville Police Department, Mr. Belvin was met by Officer Christopher Kelley, and ultimately placed in handcuffs. (Exhibit A). The plaintiff claims that due to a recent shoulder surgery, the handcuffing procedure re-injured his shoulder, which required a second surgical procedure. (Exhibit A).

(Doc. 8 at 2). This statement runs afoul of this Court's Uniform Initial Order in a

number of ways. First, it is not properly identified as a "Statement of Allegedly Undisputed Relevant Material Facts," and does not have facts set out in separately numbered paragraphs. Next, the statement contains no "facts" at all, only <u>allegations</u> from the First Amended Complaint. Furthermore, at least as to their fourth sentence, the Defendants get those allegations wrong. As pointed out by the Plaintiff, and independently verified by the Court, while the Plaintiff alleges that Officer Kelley's actions caused him injury, the First Amended Complaint does not mention a recent shoulder surgery, or state that Officer Kelley exacerbated or re-injured the Plaintiff. (*See* doc. 11; *see also*, doc. 1-1). The Plaintiff alleges that Officer Kelley caused his injury by the way Officer Belvin handled the Plaintiff's arm "**prior to placing . . . handcuffs [on him]**," not by "the handcuffing procedure." (Doc. 11 at 4) (citing doc. 1-1 ¶¶ 20, 34-39). Finally, the only evidentiary citation offered by the Defendants is to "Exhibit A," which is the eleven-page First Amended Complaint. Notably, the Plaintiff pointed out all of these issues, and more, in the response brief he filed on April 26, 2019. (*See* doc. 11 at 3-6). Still, the Defendants did not seek leave to correct any of their mistakes, nor did they file a reply brief.

This Court's Uniform Initial Order states that "**[t]he court reserves the right *sua sponte* to STRIKE any statements of fact or responsive statements that fail to comply with these requirements.**" (Doc. 3 at 18) (bold in original). However,

given the Plaintiff's agreement with the first three sentences of the Defendants'
statement of facts, instead of striking it, the Court will consider those sentences as
proffered by the Defendants.  Additionally, the Court will consider the Defendants'
forth sentence, but, as the Court has itself read the Amended Complaint, it will not
accept the Defendants' misstatement of that document.

The Court could also limit the Defendants to only those facts they have set out
in those four sentences.  (See doc. 3 at 16) (requiring the moving party to "list . . .
each material fact . . . upon which the moving party relies to demonstrate that it is
entitled to summary judgment"). Furthermore, because Rule 56 provides that "[t]he
court need consider only the cited materials," FED. R. CIV. P. 56(c)(3), this Court
could refuse to consider anything in the record other that what the Defendants cited.
Instead, as noted above, the Court has read and considered all of the parties'
arguments and all of the evidence submitted to the Court.  Officer Kelley's version
of events.

### B.    Officer Kelley's Testimony

Officer Kelley states under oath that he met the Plaintiff in the parking lot, did
not physically grab him, said "let's go into the police department, and walked [the
Plaintiff] to the back door, opened it, and let him inside."  (Doc. 12-3, at 15(54)).
Officer Kelley agrees that the Plaintiff "was voluntarily going in," and "was [not]

resisting." (Doc. 12-3 at 16(59)). Officer Kelley agrees that the Plaintiff's wife was present and that Officer Kelley told her not to follow them inside because "she didn't need to see this." (Doc. 12-3 at 15(54)). Officer Kelley testified that, after entering the station,

> I tell him to put his hands behind his back, and he does, and I do grab -- I'm left handed, so it would have been his right arm. I do not jerk his arm behind his back. I just hold it and put a handcuff on, switch hands and then put the handcuffs on. And then I double lock them so that they don't tighten up.

(Doc. 12-3, at 16(60)-17(61)). Officer Kelley also testified that he believes that, after he handcuffed the Plaintiff, the Plaintiff "said his shoulder was bothering him." (Doc. 12-3, at 17(62); 20(72)). Officer Kelley agrees that the Plaintiff acted "relatively calm" during his interactions with Officer Kelley, and "wasn't fighting or resisting." (Doc. 12-3 at 19(69-70)).

## C. **The Plaintiff's Proffered Facts**

The Court's Uniform Initial Order provides:

> The reply submission, if any, shall consist of only the moving party's disputes, if any, with the non-moving party's additional claimed undisputed facts. The moving party's response to the non-moving party's additional facts shall be in *separately numbered paragraphs* that coincide with those of the non-moving party's additional facts. Any statements of fact that are disputed by the moving party <u>must</u> be followed by a <u>specific</u> reference to those portions of the evidentiary record upon which the disputation is based. *All facts set forth in the statements required of the opposing parties will be deemed to be admitted for summary judgment purposes unless controverted in the*

*manner required herein by the statement of the opposing party.*

(Doc. 3 at 18) (underlining and italics in original). In addition, Rule 56 provides that "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]" FED. R. CIV. P. 56(e)(2). The Defendants did not file a reply submission. Accordingly, the Defendants have not disputed any of the Plaintiff's assertions and the following facts, which he proffered in his response brief, are deemed to be admitted:

> 1. In February 2014, and for many years prior, Plaintiff, Charles Belvin . . . , lived in the small town of Springville, Alabama with his wife and their teenage son, Trey Belvin.
>
> 2. On the evening of February 26, 2014, Plaintiff received a phone call from Plaintiff's tenant, Pollard, who owed Plaintiff rent.
>
> 3. Pollard told Plaintiff that earlier that evening he had sworn out a warrant [with] the City of Springville against Plaintiff for harassing communications regarding Plaintiff's attempts to collect rent from Pollard.
>
> 4. When Plaintiff learned about the warrant that evening he called the City of Springville police department to ask whether there was a warrant for his arrest, and when the existence of the warrant was confirmed, Plaintiff asked if he could turn himself in the following morning after he completed his school bus route.[4]
>
> 5. The individual Plaintiff talked to at the Springville Police Department

---

[4] Plaintiff works as a . . . school bus driver for the Jefferson County School System.

that night told him he could turn himself in at the Springville Police Department the following morning, February 27, 2014, as long as he arrived by 9 a.m.

6. The following morning[,] Plaintiff completed his bus route, and then he and his wife went to the police station so that Plaintiff could bond out once he turned himself [in] on the low-level misdemeanor charge for harassing communications.

7. Plaintiff and his wife arrived at the police station in Springville at approximately 9 a.m. and was told by police personnel to wait for Officer Kelley in the parking lot outside the police station in order to turn himself in on the harassing communications charge.[5]

8. Officer Kelley arrived a few minutes later and approached Plaintiff and his wife in the parking lot and instructed Plaintiff to follow him into the back door of the police station building to be booked on the charge.

9. Plaintiff followed Kelley into the back door of the police station and went inside.

10. Kelley told Plaintiff's wife that she should not . . . follow them inside because "she didn't need to see this."

11. Once Kelley and Plaintiff were inside the building, Kelley told [P]laintiff to turn around and place his hands behind his back and Plaintiff complied.

12. As Plaintiff was standing with his hands behind his back, Kelley approached Plaintiff from behind and grabbed his right arm, pulled it up and away from Plaintiff's back, forcefully shoving Plaintiff's arm away from his body behind him.

13. When Kelley bent and forced Plaintiff's arm up and away from his

---

[5] In his deposition, the Plaintiff testified under oath to the facts in paragraphs 1-7. (*See* doc. 12-2).

body behind his back it caused Plaintiff's upper body to involuntarily fall forward and against a filing cabinet in front of him.

14. Kelley pulled Plaintiff's arm behind him and up beyond a 90-degree angle and continued holding Plaintiff's arm at a high angle behind his back for several seconds before bring[ing] his arm down and placing the handcuffs [on Plaintiff].

15. Plaintiff experienced immediate pain in his shoulder when Kelley pulled and shoved his arm upward behind his back.

16. Thereafter[,] [a]fter Kelley placed the handcuffs on Plaintiff's wrists[,] [Kelley] then escorted Plaintiff to his police vehicle where Kelley made Plaintiff crawl into his backseat face-first and drove him to Ashville, Alabama where Kelley delivered Plaintiff into the custody [of] St. Clair County, Alabama jail personnel.

17. Plaintiff was booked, processed and bonded out within a couple of hours.

18. Plaintiff called his orthopedic surgeon, Dr. David Lemak, that afternoon after he returned home and made an appointment to see Dr. Lemak later that week about the severe pain he was experiencing . . . in his shoulder.

19. Dr. Lemak examined Plaintiff a few days later and[,] in early March 2014[,] ordered an MRI [of] Plaintiff's right shoulder which revealed a torn rotator cuff.[6]

20. Dr. Lemak surgically repaired the "high-grade partial tear" of the right rotator cuff on March 26, 2014.

21. [Bill Lyle, the Chief of Police for the City of Springville] agreed that if Kelley used any force at all by pulling or pushing [B]elvin's arm

---

[6] In his depositions, the Plaintiff testified under oath to the facts in paragraphs 10-19., (*See* docs. 12-1, 12-2).

behind his back and up in a manner that bent his arm at an awkward angle, while Belvin was compliant and non-resistant, that Kelley then "used unnecessary force", that was "unjustified" and "unreasonable", that "violated mandatory" Springville police policies and "exceeded his authority".

(Doc. 11. pp. 7-10).

## III.  ANALYSIS

As noted previously, the Plaintiff alleges negligence against the City and Officer Kelley (Count One), wantonness against Officer Kelley alone (Count Two), and unreasonable use of force, in violation of 28 U.S.C. § 1983, against Officer Kelley alone (Count Three). The Defendants seek summary judgment on all three counts.  The Court will address each count in turn, beginning with Count Three.

### A.  The Court Will Deny Summary Judgment on the Unreasonable Use of Force Claim in Count Three

Recall that the Plaintiff has presented evidence, and it is undisputed for the purposes of deciding this motion, that Officer Kelley bent and forced the Plaintiff's arm "up and away from his body behind his back," causing the Plaintiff "to involuntarily fall forward and against a filing cabinet in front of him," and "pull[ing] [the Plaintiff's] arm behind him and up beyond a 90-degree angle and continued holding Plaintiff's arm at a high angle behind his back for several seconds" before putting the handcuffs on the Plaintiff.  (*See* Admitted Facts 13-14, *supra* at 7; *see also* doc. 12-1 at 18-19, 23, 28-30).  The Defendants make <u>no</u> argument that this did

not occur, and set out <u>no</u> contrary evidence.  Although the Court, on its own, has discovered Officer Kelley's testimony stating that he used no force (*see* doc. 12-3, at 16(60)-17(61)), in reviewing a summary judgment motion the Court may only consider the facts "'[t]aken in the light most favorable to the party asserting the injury.'" *Tolan v. Cotton*, 572 U.S. 650, 655–56, 134 S. Ct. 1861, 1865, 188 L. Ed. 2d 895 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Officer Kelley's testimony accordingly does nothing more than dispute the Plaintiff's facts, thereby creating a genuine issue of material fact.

Officer Kelley argues that he is entitled to qualified immunity and therefore summary judgment as to Count Three. (Doc. 8, at 9, 11).  The City claims that if the Court agrees that Officer Kelley is entitled to summary judgment on this count, the City also is entitled to summary judgment as to this count. (*Id.* at 11-12).  Very recently, the Eleventh Circuit explained:

> "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (internal quotation marks omitted). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

> To be clearly established, a right must be well-established enough "that every reasonable official would have understood that what he is

doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) (internal quotation marks omitted and alteration adopted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate" and thus given the official fair warning that his conduct violated the law. *Id*. (emphasis added); *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) ("The critical inquiry is whether the law provided [Defendant officers] with 'fair warning' that their conduct violated the Fourth Amendment.").

Fair warning is most commonly provided by materially similar precedent from the Supreme Court, this Court, or the highest state court in which the case arose. *See Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). However, a judicial precedent with identical facts is not essential for the law to be clearly established. *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010). Authoritative judicial decisions may "establish broad principles of law" that are clearly applicable to the conduct at issue. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1209 (11th Cir. 2007). And occasionally, albeit not very often, it may be obvious from "explicit statutory or constitutional statements" that conduct is unconstitutional. *Id*. at 1208–09. In all of these circumstances, qualified immunity will be denied only if the preexisting law by case law or otherwise "make[s] it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans*, 626 F.3d at 563.

A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Assuming the defendant makes the required showing, the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct. *See Perez v. Suszczynski,* 809 F.3d 1213, 1218 (11th Cir. 2016).

*Gates v. Khokhar*, 884 F.3d 1290, 1296–97 (11th Cir. 2018), *cert. denied*, No. 18-

511, 2019 WL 113142 (U.S. Jan. 7, 2019). Furthermore, the Court must "resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003).

In his brief, Officer Kelley sets out the law of qualified immunity and then argues that "he has met his initial burden to establish qualified immunity" because he was acting "within his discretionary authority as a police officer." (Doc. 8 at 10). The Court agrees that an officer acts within his discretionary authority when making an arrest and when deciding to handcuff an arrestee. Accordingly, the burden shifts to the Plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct.

Importantly, Officer Kelley never argues that the Plaintiff cannot meet this burden. Officer Kelley's discussion on this issue simply ends with his statement that he acted within his discretionary authority. Officer Kelley has not satisfied his summary judgment burden to either: simply "show" that there is an absence of evidence to support the Plaintiff's case, *see Fitzpatrick*, 2 F.3d at 1115-16, or provide affirmative evidence demonstrating that the Plaintiff will be unable to prove these

elements at trial, *see id*. at 1116. For that reason alone, summary judgment is due to be denied as to this count.

Regardless, and additionally, the undisputed facts and/or the facts cast in the light most favorable to the Plaintiff establish that Officer Kelley is not entitled to qualified immunity. Very recently, the Eleventh Circuit has written:

> "Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (quotation omitted).. . . [I]n deciding the merits of a claim of excessive force, the court must in each case determine whether—given all the facts and circumstances of a particular case—the force used was "reasonable" under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989); *see also Long v. Slaton,* 508 F.3d 576, 580 (11th Cir. 2007) ("Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, we must slosh our way through the factbound morass of reasonableness." (quotations, alterations, and citations omitted) ).

> "In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). We consider, among other things, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 109 S.Ct. at 1872.

> We stress that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. And we must

allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* "We are loath to second-guess the decisions made by police officers in the field." *Vaughan v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003).

*Beckman v. Hamilton*, No. 17-12407, 2018 WL 1907151, at *2–3 (11th Cir. Apr. 23, 2018) (emphasis added); *see also Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) ("To determine 'whether the force used to effect a particular seizure is "reasonable," the *Graham* Court noted three nonexclusive factors for evaluating an officer's necessity for using force against an arrestee's Fourth Amendment rights: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'").

In applying the *Graham* objective-reasonableness standard, our circuit has identified three factors to evaluate for determining if the force used by an officer in making an arrest was objectively reasonable: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." [*Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)] (citing [*Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002)]; *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986)). . . . [T]he first two of these factors were subsumed in . . . the *Graham* factors[.]

*Stephens*, 852 F.3d at 1324–25.

When the *Graham* factors are examined in this case, <u>no</u> force was necessary. The Plaintiff was charged only with a low level misdemeanor and there is no evidence

that he was a threat to anyone. He voluntarily turned himself in, complied with all of Officer Kelley's commands, and did not resist in any manner. (*See* admitted facts 6-9, 11, *supra* pp. 9-10; *see also,* doc. 12-3 at 15(54), 16(59), 19(69-70)). Not only is there no evidence that the actions Officer Kelley took were necessary or appropriate under the circumstances, Bill Lyle, the Chief of Police for the City of Springville, agrees that, based on the Plaintiff's facts, Officer Kelley "used unnecessary force", that was "unjustified" and "unreasonable", and that he "violated mandatory" Springville police policies, and "exceeded his authority." (Admitted fact 21, *supra* at 11). Finally, the extent of the injury inflicted, a torn rotator cuff, is hardly a minor injury or one which should occur normally when someone is handcuffed. (*See* doc. 12-5 at 8(28) (Lemak Deposition)) ("I would feel in a routine arrest where there's no forced or any type of resistance, that people don't get torn rotator cuffs. It's not a common thing.").

Simply put, "qualified immunity is not appropriate when the *Graham* analysis yields an answer that is clear beyond all doubt," as it is here. *Stephens*, 852 F.3d at 1324. The Court also notes that at the time of the events of this case the law was clearly established that Officer Kelley's conduct constituted excessive force. *Id.* at 1323 (finding that there was excessive force when officer used force which "had nothing to do with . . . placing handcuffs on [a] nonresisting [plaintiff]"). Regardless,

it should have been obvious to Officer Kelley that his actions were unconstitutional. Accordingly, Officer Kelley's motion for summary judgment will be denied as to Count Three.

Even though Count Three is <u>expressly</u> brought against Officer Kelley alone (*see* doc. 1-1 at 9, ¶58), the Defendants still argue that "if Kelley is entitled to immunity, and summary judgment, [the City of] Springville, for reasons set forth above, is due summary judgment as well." (Doc. 8 at 11-12). This argument is both moot and without merit. The Court will also deny the Motion to the extent that it seeks summary judgment in favor of the City as to Count Three.

### B. <u>Summary Judgment Is Not Appropriate on the State Law Claims in Counts One and Two</u>

As to these counts, Officer Kelley argues only that he is entitled to state-agent immunity and the immunity provided by Ala.Code 1975, § 6-5-338, for law-enforcement officers. (Doc. 8 at 3-8). The City claims that if the Court agrees that Officer Kelley is entitled to summary judgment on these counts, it is also entitled to summary judgment. (*Id.* at 8).

It is unnecessary for the Court to restate here the entirety of the law of state-agent immunity.[7] It suffices to note that an official is not entitled to such

_____

[7] For that, the reader may refer to the parties' briefs which explain the defense in detail. (*See* doc. 8 at 3-8; doc. 11 at 25-27).

immunity if he or she acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006). Furthermore, an official is not entitled to immunity "when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise." *Ex parte Kennedy*, 992 So. 2d 1276, 1281 (Ala. 2008). The undisputed facts and/or the facts cast in the light most favorable to the Plaintiff establish that Officer Kelley exceeded his authority in exerting unnecessary and harmful force, thereby violating the Plaintiff's constitutional right to be free from excessive force in the course of an arrest. Officer Kelley is not entitled to state agent immunity.

As to the City, the Defendants argue only that "[s]hould the Court find that Officer Kelley is entitled to state-agent immunity, the City of Springville contends that they too are immune as to claims based on Officer Kelley's alleged conduct." (Doc. 8 at 8). Because Officer Kelley is not entitled to state-agent immunity, this argument is without merit and the City is not entitled to summary judgment. The Court will deny summary judgment as to Counts One and Two.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

**DONE** and **ORDERED** this 19th day of July, 2019.

**VIRGINIA EMERSON HOPKINS**
Senior United States District Judge